<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| BRIDGETTE T., | |
| Plaintiff, | Case No. 2:25-cv-13547 (BRM) |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Plaintiff Bridgette T.'s ("Plaintiff") appeal of the final decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 405(g). (ECF No. 1.) This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). Having reviewed and considered the submissions filed in connection with the appeal and having declined to hold oral argument in accordance with Local Civil Rule 78.1(b), for the reasons set forth below and for good cause shown, the Commissioner's decision is **AFFIRMED**.

I.    **BACKGROUND**

A.    **Procedural History**

This matter arises out of the Commissioner's final decision denying Plaintiff's application for DIB, dated June 18, 2025. (ECF No. 1 ¶ 4.) On March 23, 2023, Plaintiff applied for DIB alleging disability beginning on June 30, 2021, based on the following allegations of impairments: scoliosis, stenosis, degenerative disc disease, lordosis, bone loss, nerve pain, collapsed spine,

misalignment of the head with the pelvis, and fibromyalgia. (Transcript of Proceedings ("Tr.") (ECF No. 4) at 18, 232.)

At Plaintiff's request, Administrative Law Judge David Suna ("ALJ" or "ALJ Suna") held a hearing on August 8, 2024. (*Id.* at 57.) In a decision dated September 26, 2024, the ALJ found Plaintiff was not disabled within the meaning of the Act. (*Id.* at 36.) The ALJ's decision became final when the Appeals Council declined review on June 18. 205. (*Id.* at 1–7.) Having exhausted her administrative remedies, on July 21, 2025, Plaintiff filed her appeal with this Court pursuant to 42 U.S.C. § 405(g), seeking review of ALJ Suna's decision. (ECF No. 1).

**B.      Administrative History**

The ALJ determined Plaintiff last met the Act's insured status requirements on June 30, 2021. (Tr. at 21.) To evaluate whether Plaintiff was eligible for social security and disability benefits, the ALJ employed the five-step process established by the SSA. (*Id.* at 21–36.) At the time of the ALJ's decision, Plaintiff was forty-three years old and had at least a high school education.[1] (*Id.* at 34, 233.)

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity on June 30, 2021.[2] (*Id.* at 21.) While Plaintiff "worked after the alleged disability onset date," the ALJ considered Plaintiff's earnings and found her work activity did not rise to the level of substantial gainful activity. (*Id.*)

At step two, the ALJ found Plaintiff had the following severe medically determinable impairments: lumbar spine impairment, scoliosis, leg length discrepancy, rheumatoid arthritis, and

---

[1] Plaintiff has a "GED," otherwise known as a general educational development diploma/certificate. (Tr. at 233.)

[2] The relevant period for this SSA appeal is indeed a period of just one day.

2

fibromyalgia. (*Id.* at 21 (citing 20 C.F.R. § 404.1520(c)).) The ALJ determined the following impairments were non-severe: ventral and umbilical hernia, Vitamin D deficiency, and right epicondylitis. (*Id.* at 21–23.) Additionally, the ALJ found Plaintiff's alleged COVID-19 infection, cervical spine impairment, migraine headaches, and impairments involving her thumbs and index fingers were "*not a medically determinable impairment* through the date last insured." (*Id.* at 23–24 (emphasis added); *but see* ECF No. 6 at 14 (misstating the ALJ's determination as to Plaintiff's "history of COVID-19, cervical spine impairment, migraine headaches, and thumb and index finger impairments [as] non-severe impairments").)

At step three, ALJ Suna concluded Plaintiff did not have an "impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." (*Id.* at 24.) First, the ALJ determined Plaintiff did not meet the requirements of listing 1.15 for the scoliosis and lumbar spine impairments because there was "no documentation of the use of any handheld assistive devices, and the clinical examinations do not show any significant neurologic deficits in the upper extremities such as motor strength deficits, loss of sensory functioning, or abnormalities in reflexes." (*Id.*) Second, the ALJ concluded Plaintiff did not meet the requirements of listing 14.09 for the rheumatoid arthritis because there were no "remarkable" findings from either Dr. Janet B. Bartov or Dr. Denis L. Autotte, except "findings of thoracic and lumbar scoliosis without any apparent notations of gait abnormalities or neurologic deficits." (*Id.* at 25.)

Additionally, before turning to step four, the ALJ considered "the entire record" and found Plaintiff "had the residual functional capacity to perform light work as defined in 20 CFR

404.1567(b)" but with certain functional limitations.[3] (*Id.* at 25–33.) In considering a claimant's symptoms, ALJs "follow a two-step process." (*Id.* at 25.) First, the ALJ evaluated "whether there is an underlying medically determinable physical or mental impairment." (*Id.*) Then, "once an underlying physical or mental impairment[] that could reasonably be expected to produce the claimant's pain or other symptoms has been shown," the ALJ "evaluate[d] the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities." (*Id.*)

After considering the evidence and conducting the aforementioned two-step process,[4] the ALJ concluded Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 28.) With respect to her scoliosis, lumbar spine impairment, the ALJ noted there was "minimal treatment, relatively unremarkable clinical examination findings, and no significant treatment for the scoliosis or lumbar [impairment]." (*Id.*) The ALJ observed that Plaintiff "worked at the substantial gainful activity level in 2019 and 2020 performing light to medium exertion, with evidence of worsening of her condition clearly documented after the date last insured," despite a "May 2011 X-ray showing that her right leg was shorter than her left leg." (*Id.* at 28, 30.) The ALJ also considered Plaintiff's diagnostic testing and treatment history. (*Id.* at 28–30.) Additionally, the ALJ reviewed documentation from a time shortly after the date Plaintiff was last insured, which

---

[3] The limitations are as follows: Plaintiff can "stand or walk no more than 4 hours in an eight-hour workday[,] . . . occasional[ly] push/pull[,] . . . climb[] . . . ramps and stairs[,]" balanc[e], stoop[], kneel[], and crouch[,] . . . and tolerate moderate noise as defined by the Selected Characteristics of Occupations." (Tr. at 25.) However, the ALJ also found Plaintiff could not "climb[] ladders, ropes, or scaffolds[,] never crawl[,] [and could have] no exposure to hazards such as unprotected heights, dangerous machinery, or operating a motor vehicle." (*Id.*)

[4] The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms she had alleged. (Tr. at 28.)

revealed "normal gait, no muscle atrophy, no swelling of any joints, and full [range of motion] of all joints." (*Id.* at 30.)

As to Plaintiff's fibromyalgia and rheumatoid arthritis, the ALJ observed "the only treatment for these conditions [occurred] during the period at issue is the May 19, 2021 visit with rheumatologist Dr. Bartov, who documented no acute distress, intact orientation, normal gait, no muscle atrophy, normal affect, no swelling, and full [range of motion] in all joints." (*Id.* at 31.) Critically, "the record [revealed] only one treatment with [Plaintiff's] rheumatologist just prior to the alleged onset date and date last insured with an unremarkable clinical examination and continuation of the Tramadol, which she has taken since at least 2012." (*Id.*)

Additionally, mindful he "cannot defer or give any specific evidentiary weight . . . to any prior administrative medical finding(s) or medical opinion(s)," the ALJ "considered the medical opinions and prior administrative" contained in the record. (*Id.* at 31–33.) The ALJ reviewed Dr. Autotte's various opinions and found each unpersuasive.[5] (*Id.*) Additionally, the ALJ considered

---

[5] On November 7, 2013, Dr. Autotte completed a form, where "she reported that she first treated [Plaintiff] on July 19, 2010, with diagnoses of spinal stenosis and recurrent umbilical hernia." (Tr. at 31.) "She opined that [Plaintiff] could lift and/or carry 5 to 10 pounds, sit less than 6 hours per day, stand and/or walk up to 2 hours per day, and [could not] bend[]." (*Id.*) The ALJ found this opinion unpersuasive not only because it was provided "years prior to the alleged onset date and date last insured," but also because he found it inconsistent "with the objective evidence during the period at issue." (*Id.*) Dr. Autotte also completed a form on October 25, 2023, indicating Plaintiff's "most recent clinical examination was on July 21, 2023" with "abnormal" musculoskeletal findings and "anxious" mood. (*Id.* at 32.) In that form, Dr. Autotte opined Plaintiff had "severe" limitations in "the duration that she [could not] stand, sit, walk, lift, or carry." (*Id.*) The ALJ found that opinion unpersuasive because Dr. Autotte "did not quantify the degree of limitations in these work related domains" and because the opinion was unsupported by her own "contemporaneous treatment notes." (*Id.*) On June 4, 2024, Dr. Autotte reported in a medical source statement form that Plaintiff's diagnoses were severe scoliosis, rheumatoid arthritis, umbilical hernia, and a herniated nucleus pulposus. (*Id.*) She also reported Plaintiff's symptoms were "pain and fatigue, with pain described as severe sharp pain in [the] back, worse with more than 10 minutes of standing or . . . more than 5 minutes" of sitting. (*Id.*) Dr. Autotte opined Plaintiff "could walk less than one block without severe pain, sit for 10 minutes at one time, stand for [twenty] minutes at one time, stand/walk less than 2 hours in an 8-hour workday, must be allowed

Dr. William E. Zaccheo's opinion that Plaintiff "could return to work but should not do any heavy lifting" but found it unpersuasive because the opinion "was provided years prior to the alleged onset date and date last insured." (*Id.* at 33.) However, the ALJ found the opinions of the state agency medical consultants, Dr. Seung Park and Dr. Mohammad Rizwan, persuasive.[6] (*Id.*) Mindful that the letters submitted by Plaintiff's husband, sister, and mother "are not medical opinions under the . . . rules for the evaluation of opinion evidence," the ALJ nevertheless considered them as part of the overall record evidence. (*Id.*) Ultimately though, the ALJ concluded the objective evidence did not support additional or more restrictive functional limitations in Plaintiff's residual functional capacity ("RFC") for the period at issue. (*Id.*)

_____

to shift position from sit[ting], stand[ing], or walk[ing] at will, and could lift/carry no weight." (*Id.*) She further opined,

> Plaintiff must get up every [ten] minutes [for a period of five] minutes, would require unscheduled breaks two to three times per hour lasting [five] minutes each, could never twist, crouch, squat, or climb ladders, rarely stoop, bend, or climb stairs, and could use her upper extremities for gross manipulation 10% of a workday, fine manipulation 50% of the time, reach overhead less than 5% of a workday, and reach in front of her body less than 10% of a workday.

(*Id.*) Dr. Autotte also opined Plaintiff "would be off-task 25% or more of the time, was incapable of even 'low stress' work, and would be absent more than four days per month." (*Id.* (internal quotation marks omitted)). "She reported these limitations applied . . . since 2019." (*Id.*) The ALJ found these opinions unpersuasive for two reasons. First, while Dr. Autotte noted these limitations started in 2019, the record shows Plaintiff "performed work at the substantial gainful activity level requiring light to medium exertion in 2019 and 2020." (*Id.*) Moreover, the ALJ concluded these opinions were unsupported by Dr. Autotte's contemporaneous treatment notes. (*Id.*)

[6] On July 10, 2023, and November 13, 2023, Dr. Park and Dr. Rizwan opined Plaintiff "could perform light exertion except standing or walking for four hours, with occasional postural activities [but] never climbing ladders, ropes, or scaffolds." (*Id.* at 33.) Dr. Park and Dr. Rizwan also determined Plaintiff would "need to avoid all exposure to hazards." (*Id.*) The ALJ found these opinions persuasive because the state agency medical consultants "supported their opinions by reviewing the evidence of record and providing a detailed rationale for them" and were "generally consistent with the overall [record evidence] for the period at issue." (*Id.*)

At step four, the ALJ determined Plaintiff was "unable to perform any past relevant work" through the date last insured. (*Id.*) The ALJ considered her work as a sales associate for a national retail store from October 2018 and December 2020 and found this work "qualifie[d] as past relevant work because [Plaintiff] performed it at the substantial gainful activity level[] within five years of the date last insured[] and long enough to achieve average performance as required by SSR 24-2p." (*Id.* at 34.) However, given the vocational expert's testimony at the hearing, the limitations in Plaintiff's RFC "would preclude her from meeting all exertional and nonexertional and requirements of her past relevant work." (*Id.*)

At step five, the ALJ took into account Plaintiff's "age, education, work experience, and [RFC]," and concluded "there were jobs that existed in significant numbers in the national economy" Plaintiff "could have performed." (*Id.* at 34, 36.) The ALJ determined that "[t]hrough the date last insured," Plaintiff "had the [RFC] to perform the full range of light work" but with "additional limitations." (*Id.* at 35.) At the hearing, the vocational expert, Melissa Fass-Karlin, testified Plaintiff would have been able to perform the requirements of representative occupations such as:

- Routing Clerk (DOT#222.687-022), which is light exertion that is unskilled with a Specific Vocational Preparation ("SVP") of two, with 117,393 jobs nationally;
- Marker (DOT#209.587-034), which is light exertion that is unskilled with an SVP of two, with 136,791 jobs nationally;
- Apparel Stock Checker (DOT#299.667-014), which is light exertion that is unskilled with an SVP of two, with 11,293 jobs nationally;
- Telephone Quotation Clerk (DOT#237.367-046), which is sedentary exertion that is unskilled with an SVP of two, with 2,730 jobs nationally;
- Call-Out Operator (DOT#237.367-014), which is sedentary exertion that is unskilled with an SVP of two, with 1,977 jobs nationally;

- Document Preparer (DOT#249.587-018), which is sedentary exertion that is unskilled with an SVP of two, with 15,670 jobs nationally.

(*Id.*) The ALJ determined "the vocational expert's testimony [was] consistent with the information contained in the Dictionary of Occupational Titles." (*Id.*) The ALJ also assessed the fact that the vocational expert's basis for her opinion "that an individual with the same [RFC] could perform [the aforementioned] jobs at light exertion" was her "professional knowledge, education, and training in the field of vocational rehabilitation counseling" and found the opinion "based on her expertise rather than the" Dictionary of Occupational Titles and/or the Selected Characteristics of Occupations were "reasonable" and "accepted" the testimony "as a whole." (*Id.*)

Moreover, "in response to a hypothetical question involving a person limited to sedentary exertion with the same nonexertional limitations as the [ALJ's] [RFC] findings," the vocational expert opined, "[i]f someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or [an] inability to sit for long periods of time." (*Id.* at 36.) Accordingly, ALJ Suna ultimately concluded Plaintiff "was not under a disability, as defined in the [SSA], at any time from June 30, 2021, the alleged onset date, through June 30, 2021, the date [Plaintiff] [was] last insured." (*Id.*)

## II.   STANDARD OF REVIEW

When reviewing a final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence" in the record. 42 U.S.C. § 405(g); *see Knepp*

*v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). A district court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985) (citations omitted). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003). The Supreme Court reaffirmed this understanding of the substantial evidence standard in *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019). To determine whether an ALJ's decision is supported by substantial evidence, a court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Accordingly, a court may not set an ALJ's "decision aside if it is supported by substantial evidence, even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

## III.   THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Act, the SSA is authorized to pay SSI and DIB to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Act establish a five-step process for determining whether a claimant is disabled for purposes of SSI and DIB. 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown he or she is not currently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *see Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *Id.* Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *see Bowen*, 482 U.S. at 140–41. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). These activities include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

*Id.* A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R. § 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if a claimant's impairment(s) is found to be severe, the ALJ then determines whether the impairment(s) meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates

10

his or her impairment(s) is equal in severity to, or meets, one of the impairments on the Impairment

List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits.

*See* 20 C.F.R. § 404.1520(d); *see also Bowen*, 482 U.S. at 141. If the claimant's specific

impairment is not listed, the ALJ will consider the most similar listed impairment to decide whether

the claimant's impairment is medically equivalent. *See* 20 C.F.R. § 404.1526. If there is more than

one impairment, then the ALJ must consider whether the combination of impairments equals any

listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a

listed impairment if there are medical findings equal in severity to all the criteria for the one most

similar. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

　　If the claimant is not conclusively disabled under the criteria set forth in the Impairment

List, step three is not satisfied, and the claimant must prove at step four whether he or she retains

the residual functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R.

§§ 404.1520(e), (f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's
> [RFC]; (2) the ALJ must make findings of the physical and mental
> demands of the claimant's past relevant work; and (3) the ALJ must
> compare the [RFC] to the past relevant work to determine whether
> claimant has the level of capability needed to perform the past
> relevant work.

*Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When

determining RFC, an ALJ's consideration of medical opinion evidence is subject to the framework

articulated in 20 C.F.R. § 404.1527 (for claims filed before March 27, 2017) or 20 C.F.R.

§ 404.1520(c) (for claims filed after March 27, 2017).

　　Claimants are not disabled if their RFC allows them to perform their past relevant work.

20 C.F.R. §§ 404.1520(a)(4)(iv), (f). However, if the claimant's RFC prevents him or her from

doing so, or if the claimant has no past relevant work, an ALJ proceeds to the fifth and final step

11

of the process. 20 C.F.R. § 404.1520(a)(4)(g). The final step requires the ALJ to "show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [his or] her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1520(a)(4)(v). In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1523. An ALJ typically seeks the assistance of a vocational expert at this final step. *Plummer*, 186 F.3d at 428.

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings." *Id.* at 263 n.2; *see Bowen*, 482 U.S. at 146 n.5. An ALJ bears the burden of proof for step five. *Sykes*, 228 F.3d at 263.

On appeal, the harmless error doctrine requires a plaintiff to show, as to the first four steps: (1) an error occurred; and (2) but for that error, they might have proven their disability. *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). In other words, when reviewing an appeal based on the first four steps, a court considers whether the plaintiff articulated a basis for a decision in their favor, based on the existing record. If the plaintiff cannot, it is unlikely they will meet their burden of showing an error was harmful. *See, e.g.*, *Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 380–81 (D.N.J. 2013) (finding ALJ's error was harmless); *Powers v. Comm'r of Soc. Sec.*, Civ. A. No. 19–21970, 2021 WL 1207793, at *7 (D.N.J. Mar. 31, 2021) (finding the plaintiff had not demonstrated she was prejudiced by the ALJ's decision and had not shown an error occurred amounting to harm).

The court's review of legal issues within this appeal is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). However, factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes*, 228 F.3d at 262. Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). Substantial evidence also "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted). When substantial evidence exists to support the Commissioner's factual findings, this Court must abide by those determinations. *See id.* (citing *Schaudeck*, 181 F.3d at 431); 42 U.S.C. § 405(g).

## IV.   DECISION

Plaintiff appeals the Commissioner's decision and asks the Court to reverse ALJ Suna's decision and remand the action for further proceedings. (ECF No. 6.) However, the Commissioner requests the Court affirm the Commissioner's decision because it claims the ALJ relied on substantial evidence to find Plaintiff not disabled during the relevant period. (ECF No. 8.)

### A. Based on existing Third Circuit precedent, it was not error for the ALJ to discredit Plaintiff's subjective complaints regarding fibromyalgia symptoms.

Plaintiff contends the ALJ erred by failing to properly assess her subjective complaints of pain and fatigue from her fibromyalgia. (ECF No. 6 at 16–18.) More specifically, Plaintiff alleges the ALJ failed to adequately consider the waxing and waning of her fibromyalgia symptoms and erroneously "rejected [her] reported symptoms based on a lack of objective evidence." (ECF No. 6 at 16–17.)

The Commissioner disagrees. First, the Commissioner contests the supposed inadequacy of the ALJ's consideration of the waxing and waning nature of Plaintiff's fibromyalgia symptoms,

13

noting the ALJ "acknowledged Plaintiff's hearing testimony that she experienced 'more flare ups of her fibromyalgia . . . in 2021'" and considered "the longitudinal record, despite a relevant period of only one day, and found that Plaintiff's rheumatology treatment notes showed relative stability of her fibromyalgia, particularly as her only treatment, tramadol, was required 'very sparingly.'" (ECF No. 8 at 8–9 (quoting Tr. at 27, 1221).) Additionally, the Commissioner points out that "Plaintiff's 2021 treatment records with rheumatologist Dr. Bartov" does not include a "complaint regarding flare ups or waxing and waning symptoms, let alone a reported increase in the same." (*Id.* (citing Tr. at 1216).) Second, the Commissioner suggests Plaintiff's argument that the ALJ incorrectly discounted her fibromyalgia complaints based on a lack of objective evidence is unpersuasive because the ALJ "considered the objective evidence as one consideration, among many, in his analysis." (*Id.* at 9 (citing Tr. at 28–31).)

In reply, Plaintiff argues "the ALJ's acknowledgment of [Plaintiff's] hearing testimony of having more flare ups in 2021," his "consider[ation] [of] the longitudinal record," and "f[inding] that Plaintiff's rheumatology treatment notes showed relative stability of her fibromyalgia" do not constitute "a discussion of why symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." (ECF No. 9 at 2–3 (first quoting ECF No. 8 at 7; then quoting SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016)).) Instead, Plaintiff contends the Commissioner has merely provided a post hoc rationale. (*Id.* (citing *Keiderling v. Astrue*, Civ. A. No. 07-2237, 2008 WL 2120154, at *3 (E.D. Pa. May 20, 2008)).) Plaintiff goes on to argue that courts in the Third Circuit have recognized that fibromyalgia is a disease which is notable for its lack of objective diagnostic techniques and consequently held it is legal error for an ALJ to reject a plaintiff's fibromyalgia symptoms for lack of objective findings. (*Id.* at 3–4 (citing *Claudine J.N. v. Bisignano*, Civ. A. No. 24-5925, 2025 WL 2555371, at *5 (E.D.

14

Pa. Sept. 4, 2025); *Emily K. v. Dudek*, Civ. A. No. 22-3279, 2025 WL 762688, at \*10 (D.N.J. Mar. 11, 2025)).)

When evaluating a claimant's symptoms, ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at \*3.

Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. *See* 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at \*4. At this step, objective evidence is not required to find the claimant disabled. SSR 16-3p, 2016 WL 1119029, at \*4–5. SSR 16-3p recognizes "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." *Id.* at \*4. As such, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. *Id.* at \*5. This is especially important when assessing the intensity and persistence of alleged fibromyalgia symptoms because "[t]he problem with looking for independent findings and observations is that fibromyalgia is a disease which is notable for its lack of objective diagnostic techniques." *Emily K.*, 2025 WL 762688, at \*10 (quoting *Foley v. Barnhart*, 432 F. Supp.2d 465, 475 (M.D. Pa. 2005)); *see also Wilson v. Apfel*, Civ. A. No. 98-6511, 1999 WL 993723, at \*1 n.1 (E.D. Pa. Oct. 29, 1999) (symptoms of fibromyalgia are subjective), *aff'd*, 225 F.3d 651 (3d Cir. 2000).

Here, the ALJ found Plaintiff's "medically determinable impairments [including her

15

fibromyalgia] could reasonably be expected to cause the alleged symptoms," satisfying the first step of the symptom-evaluation framework. (Tr. at 28.) At the second step, the ALJ discredited Plaintiff's statements about the severity, persistence, and limiting effects of her symptoms because he did not find them to be "entirely consistent with the medical evidence and other evidence in the record." (*Id.*) As the ALJ recounted, Plaintiff reported "flare ups of her fibromyalgia and rheumatoid in 2021," and shared that these conditions caused, *inter alia*, "more pain in her knees, ankles, wrists, thumbs, and index fingers." (*Id.* at 27.) "Due to these issues, [Plaintiff] reported that she couldn't really function that well anymore." (*Id.* (internal quotation marks removed).) However, the ALJ discounted these statements and emphasized: (1) Dr. Bartov's documentation [of] no acute distress, intact orientation, normal gait, no muscle atrophy, normal affect, no swelling, and full range of motion in all joints," (2) Plaintiff's "continued [use] [of] . . . Tramadol for her fibromyalgia" during the period at issue, (3) Plaintiff's use of Tramadol "since at least October 1, 2012," and her request for more on November 6, 2017, "with good results," and (4) Dr. Autotte's notation "Plaintiff 'did well with [the] Tramadol that she only takes' at night." (Tr. at 31 (quoting Tr. at 586, 597, 1337, 1348).)

This was not error—at least not in the Third Circuit.[7] *Trauterman v. Comm'r of Soc. Sec.*,

---

[7] In *Arakas v. Commissioner, Social Security Administration*, the Fourth Circuit joined the First, Second, Sixth, Seventh, Eighth, and Ninth Circuits, holding "ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia." 983 F.3d 83, 95–98 (4th Cir. 2020) (concluding it was legal error for the ALJ to rely "principally on [normal examination] results—*i.e.*, a full range of motion and the lack of joint inflammation—in discounting [the SSA claimant's] complaints as inconsistent with the objective evidence"). The Fourth Circuit held it was "doubly erroneous" for the ALJ to "'effectively require[] 'objective' evidence for a disease that eludes such measurement.'" *Id.* (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003)). Perhaps, in time—"based on the current medical understanding of [fibromyalgia]," *id.* at 97—the Third Circuit will revisit *Trauterman v. Commissioner of Social Security* and join the majority of its sister circuits. 296 F. App'x 218, 220 (3d Cir. 2008) (finding it was appropriate for the ALJ to consider objective evidence where the plaintiff not only suffered from fibromyalgia,

16

296 F. App'x 218, 220 (3d Cir. 2008). In *Trauterman*, the Third Circuit found "it was quite appropriate for the ALJ to consider the objective medical evidence of record" where the SSA claimant's claim of disability was "not attributed exclusively to fibromyalgia." 296 F. App'x at 220. *But see Johnson v. Astrue*, 597 F.3d 409, 414 (1st Cir. 2010); *Green-Younger v. Barnhart*, 335 F.3d 99,108 (2d Cir. 2003); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996); *Brosnahan v. Barnhart*, 336 F.3d 671, 677–78 (8th Cir. 2003); *Revels v. Berryhill*, 874 F.3d 648, 666 (9th Cir. 2017).

Here, Plaintiff's claim for DIB is not based solely on fibromyalgia; the ALJ also found that Plaintiff suffered from lumbar spine impairment, scoliosis, leg length discrepancy, rheumatoid arthritis, among others. (Tr. at 21.) "In light of these diagnoses, it was . . . appropriate for the ALJ to consider the objective medical evidence of record." *Trauterman*, 296 F. App'x at 220 (finding it was appropriate for the ALJ to consider objective evidence where the plaintiff not only suffered from fibromyalgia, but also cervical spine disc herniation, lumbar spine degenerative joint disease, and carpal tunnel syndrome); *see also Ilaria G. v. Colvin*, Civ. A. No. 22-1366, 2024 WL 5244864, at *20 (D.N.J. Dec. 30, 2024) (noting "the ALJ properly considered the objective evidence relating to Plaintiff's degenerative disc disease of the cervical and lumbar spines as well as fibromyalgia").

Additionally, the ALJ considered Plaintiff's hearing testimony that she was experiencing "more flare ups of her fibromyalgia" and "more pain in her knees, ankles, wrists, thumbs, and index fingers." (Tr. at 27.) "Even in fibromyalgia cases, the ALJ must compare the objective

---

but also cervical spine disc herniation, lumbar spine degenerative joint disease, and carpal tunnel syndrome). However, unless and until *Trauterman* is clearly overruled by the Third Circuit or the Supreme Court of the United States, this Court is dutybound to follow *Trauterman*. *See Gov't Emps. Ins. Co. v. Caring Pain Mgmt. PC*, Civ. A. No. 22-5017, 2025 WL 2017255, at *6 (D.N.J. July 18, 2025) (observing that district courts must follow Third Circuit precedent "until a proper intervening change in the law has occurred").

evidence and the subjective complaints and is permitted to reject plaintiff's subjective testimony so long as [the ALJ] provides a sufficient explanation for doing so." *Ivelise S. v. Comm'r of Soc. Sec.*, Civ. A. No. 24-9381, 2025 WL 2734160, at *5 (D.N.J. Sept. 25, 2025). ALJ Suna concluded Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. at 28.) Specifically, as detailed above, the ALJ found "the only treatment for [Plaintiff's fibromyalgia] during the period at issue [wa]s the May 19, 2021 visit with . . . Dr. Bartov, who documented no acute distress, intact orientation, normal gait, no muscle atrophy, normal affect, no swelling, and full ROM in all joints." (*Id.* at 31.) The ALJ also considered that Plaintiff "continued [using] Tramadol for the fibromyalgia at that time . . . . [and] [had] been taking Tramadol since at least October 1, 2012, as noted by primary care physician Dr. Autotte." (*Id.*) Additionally, the ALJ observed that Plaintiff "informed Dr. Autotte that Tramadol works for R.A. pain . . . [and] . . . asked for more Tramadol, which she took at night, with good results." (*Id.* (internal citations and quotation marks omitted).) Moreover, the ALJ also credited Dr. Autotte's assessment that Plaintiff "did well with [the] Tramadol that she only takes at night." (*Id.*) Therefore, the Court finds the ALJ sufficiently supported his reasons for discounting Plaintiff's testimony and subjective complaints of pain. *See Burns v. Barnhart*, 312 F.3d 113, 129-130 (3d Cir. 2002) (finding substantial evidence supported the ALJ's decision where the ALJ considered parts of the plaintiff's testimony but found them inconsistent with other parts of the medical record); *see also Trauterman*, 296 F. App'x at 221 ("The ALJ also concluded that Trauterman's activities of daily living and subjective complaints of pain were, in some respects, contrary to the medical evidence. These findings are supported by substantial evidence . . . .").

## V.    CONCLUSION

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**. An appropriate Order follows.

**Date: March 19, 2026**                          */s/ Brian R. Martinotti*
                                              **HON. BRIAN R. MARTINOTTI**
                                              **UNITED STATES DISTRICT JUDGE**

19